UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| WICKFIRE, LLC,<br><br>　　　　　Plaintiff,<br><br>　v.<br><br>TRIMAX MEDIA, INC., *et al.*,<br><br>　　　　　Defendants. | No.  2:15-mc-00051-RSL<br><br>REPLY MEMORANDUM IN SUPPORT OF MOTION TO QUASH & MOTION TO STRIKE<br><br>Related Case:  U.S. District Court for the Western District of Texas at Austin Case No. 1:14-CV-34-SS<br><br>NOTEE ON MOTION CALENDAR: Friday, May 22, 2015 |

BrandVerity submits this memorandum in reply to TriMax's Response in Opposition to Quash or Modify Subpoena.

### I.　　MOTION TO STRIKE

Under the Local Rules for the Western District of Washington, TriMax's opposition was due not later than Monday, May 18, 2015.  It was not filed or served until Wednesday, May 20, 2015, without explanation for its tardiness and without a motion to extend the due date.  The Court should strike it.

### II.　　REPLY TO TRIMAX'S RESPONSE

**A.　　"Bad Faith" and Efforts to Resolve**

Rather than address the deep flaws and undue burdens of the Subpoena, TriMax,

REPLY MEMORANDUM IN SUPPORT OF
MOTION TO QUASH — 1

LAW OFFICES OF
ALAN S. MIDDLETON PLLC
18550 43rd Ave. NE
Lake Forest Park, Washington  98155
(206) 533-0490

through selective citation of facts, tries instead to paint BrandVerity as acting in "bad faith." In fact, BrandVerity is the entity acting in utmost good faith:

TriMax's counsel repeatedly states that the Subpoena was served on April 7, not April 14, the date on which the witness fee check was issued by Seattle Legal Messenger Services on behalf of TriMax.  Supp. Naffziger Dec. ¶ 2; Middleton Dec. ¶ 2.  Unless TriMax produces an affidavit of service on April 7, the earliest service date obviously is April 14 (the date of the check).  This date is important, as TriMax refused to engage in any discussion concerning the Subpoena until the 15th day after service, depriving BrandVerity of the option of serving objections pursuant to Rule 45.  Supp. Naffziger Dec. ¶ 8.

BrandVerity repeatedly tried to talk with TriMax after service of the Subpoena.  Mr. Naffziger, BrandVerity CEO, grew frustrated – leading to his email about causing expense to TriMax.  As Mr. Naffziger explains, he was simply trying to provoke a response and a discussion that might make this motion unnecessary.  *Id.* ¶¶ 6-7.  But neither TriMax nor its counsel tried to contact BrandVerity until April 29, 15 days after service.  *Id.* ¶ 8.

BrandVerity has no "policy" of causing third parties to incur expense.  TriMax's two subpoenas (the first having been served last fall) are the only subpoenas BrandVerity has ever received.  *Id.* ¶¶ 4-5.  BrandVerity has no experience with litigation.  It has never sued or been sued.  *Id.*  Since engaging counsel, BrandVerity has tried hard to reach a compromise that provides TriMax relevant documents without causing BrandVerity undue burden.  Middleton Dec. ¶¶ 3 *et seq.*

On May 4, BrandVerity's counsel sent a letter to TriMax's counsel stating specific objections to the Subpoena and seeking a discussion.  TriMax ignored this letter.  It did not respond in writing; it did not propose some alternative time for the requested discussion; it did not propose or agree to extend the deadline for response pending a discussion.  *Id.* Dec. ¶ 7.

On May 7, before he filed and served the motion, Mr. Middleton tried to reach TriMax's counsel by telephone.  Mr. Vogel was out; Mr. Golden's assistant promised that Mr. Golden would respond promptly on his return to the office, which was expected shortly that

REPLY MEMORANDUM IN SUPPORT OF
MOTION TO QUASH — 2

LAW OFFICES OF
ALAN S. MIDDLETON PLLC
18550 43rd Ave. NE
Lake Forest Park, Washington  98155
(206) 533-0490

day. Mr. Golden never called – that day or any other. *Id.* ¶ 11.

BrandVerity therefore felt it had no choice but to move to quash the Subpoena. Even as it did so, it again invited a discussion with TriMax. *Id.* ¶ 12. Finally, on May 8, counsel for TriMax (Ms. Brown) agreed to talk to BrandVerity's counsel. That discussion occurred on May 11, seven days before TriMax's response was due. *Id.* ¶ 13. In that discussion, Ms. Brown proposed (subject to client approval) several concessions that would have addressed BrandVerity's objections. *Id.* But Ms. Brown never called back, either to say that her client agreed to the concessions or to discuss the Subpoena further. Instead, BrandVerity heard nothing until Ms. Brown filed TriMax's response papers on May 20, two days after the deadline under the local rules. *Id.* ¶¶ 14-15. Had Ms. Brown continued the dialogue and agreement reached, this motion could have been withdrawn and TriMax would not have incurred any expense. Instead, it chose to stonewall yet again. If any party is multiplying the cost of these proceedings, it is TriMax.

**B.   Merits**

   *1.   Document Requests Nos. 1-5.*

BrandVerity has located a handful of email threads that are responsive to Document Requests Nos. 1-5. It has been willing and prepared to produce those threads. However, in the May 11 discussion with Ms. Brown, TriMax said it would not accept BrandVerity's say-so, but would require use of an independent, third-party vendor to search BrandVerity's emails using the keywords identified in the Subpoena. *Id.* ¶ 13. TriMax then volunteered to pay for the vendor to conduct this search. *Id.* It is certainly consistent with Rule 45 that if TriMax seeks this level of effort, it should pay for it. But Ms. Brown never got back to BrandVerity.

As evidence of what it thinks it may find, in its opposition TriMax produces two emails it apparently received from Wickfire in party discovery in the Texas Action. It alleges, with no basis in fact, that they "suspect" that the two emails are merely the "tip of the iceberg." BrandVerity is not a party to the Texas Action. It has searched its emails and found

REPLY MEMORANDUM IN SUPPORT OF
MOTION TO QUASH — 3

LAW OFFICES OF
ALAN S. MIDDLETON PLLC
18550 43rd Ave. NE
Lake Forest Park, Washington  98155
(206) 533-0490

a small handful of responsive email threads.  It is willing to produce those.  In light of the highly speculative nature of TriMax's requests, BrandVerity should not be put to the expense and burden of conducting extensive keyword searches across its emails merely on speculation, particularly when copies of all of the documents requested should be in the possession of Wickfire and so subject to party discovery.[1]

2. *Document Request No. 6.*

BrandVerity has already responded to TriMax that it has found no records affirmatively establishing log-ons with the identified IP Addresses.  The issue is how TriMax phrases Request No. 6 – documents "sufficient to show."  As BrandVerity noted in its May 4 letter, the request could if read broadly require production of all of BrandVerity's data simply to prove a negative – that no BrandVerity records indicate that such log-ons occurred.  In the May 11 discussion, Ms. Brown indicated that TriMax likely could accept BrandVerity's "narrow reading" of Request No. 6.  *Id.* ¶ 13.  But she never confirmed that, and fails to argue in response what TriMax's interpretation of Request No. 6 actually is.  Producing all of BrandVerity's records to prove a negative would be extraordinarily burdensome and expensive and invade the confidential information of BrandVerity and its 8,000+ users.

Either the Subpoena should be quashed with respect to Request No. 6, or the request should be explicitly modified to require production of only "affirmative" evidence of log-ons to the IP Addresses – to which BrandVerity's response is that no such documents exist.

3. *Document Requests Nos. 7-11.*  These document requests all require BrandVerity to produce documents "related to" allegations in TriMax's counterclaims.

---

[1] If TriMax is willing to accept the "narrow interpretation" of Request No. 6 discussed below and to withdraw Requests Nos. 7-11, BrandVerity is willing to accept use of a third-party vendor to search emails provided (a) that BrandVerity is allowed the opportunity to review "hits" to determine responsiveness and any privilege; (b) that allowing this review is acknowledged by all parties not to constitute a waiver of attorney-client privilege or of confidentiality; and (c) that if confidential information of any BrandVerity user is at issue apart from that of the parties in the Texas litigation that BrandVerity be given the opportunity to provide such users notice. BrandVerity has no experience with how much time a third-party vendor would need to conduct this search (presumably it depends upon the third-party vendor retained by TriMax) and for BrandVerity to perform the tasks identified in (a) through (c) above; consequently, no deadline for production should be established until at least the vendor has been engaged.

**REPLY MEMORANDUM IN SUPPORT OF MOTION TO QUASH — 4**

LAW OFFICES OF
ALAN S. MIDDLETON PLLC
18550 43rd Ave. NE
Lake Forest Park, Washington  98155
(206) 533-0490

BrandVerity objected that the requests were ambiguous, leaving BrandVerity to guess what documents might be "related to" those wide-ranging allegations. BrandVerity also objected that the requests were unduly burdensome and would require disclosure of user-confidential information of up to 8,000+ users.

In the May 11 discussion, Ms. Brown proposed, subject to client approval, that TriMax abandon these requests. *Id.* ¶ 13. But she never confirmed that, and fails to address their ambiguity/burden in TriMax's response. The Subpoena should be quashed or modified to exclude Requests Nos. 7-11 as ambiguous and unduly burdensome.

C. **Undue Burden**

It bears repeating that BrandVerity is a small company. Its employees are dedicated to BrandVerity's core business. TriMax argues that because BrandVerity advertises itself as a "search" company, it should be able to respond with ease. As Mr. Naffziger points out in his supplemental declaration, however, BrandVerity spent many years developing software to track and report Internet advertising. It is properly proud of its product, but BrandVerity has no similar ability to search its emails and other data files. That is not its business. Supp. Naffziger Dec. ¶ 15.

The burden of each document request has already been discussed. Despite Ms. Brown's representations on May 11, TriMax fails to address any of the burdens imposed except by cavalierly referring to a BrandVerity product that has no bearing on BrandVerity's ability to respond to the Subpoena. If TriMax agrees to the proposals made by Ms. Brown on May 11 (paying for a vendor to search emails, agreeing to the "narrow interpretation of Request No. 6, and withdrawing Requests Nos. 7-11), BrandVerity's burden would be substantially less. Without those concessions, however, the Subpoena compels BrandVerity to go on a wild goose chase at considerable expense on mere speculation that potentially relevant emails might be found. That is not enough in light of the burden imposed.

Citation to alleged "rules of thumb" regarding an appropriate return date on a document subpoena are not useful in this day, where huge amounts of electronic data may

REPLY MEMORANDUM IN SUPPORT OF
MOTION TO QUASH — 5

LAW OFFICES OF
ALAN S. MIDDLETON PLLC
18550 43rd Ave. NE
Lake Forest Park, Washington 98155
(206) 533-0490

potentially be responsive.  The Court can certainly take judicial notice that such productions run well past the 10-day "rule of thumb," particularly where the document requests are ambiguous, overly broad, and the target is not set up to process third-party document requests.  If any of the Subpoena survives this motion, the Court should allow sixty (60) days to respond.

**D.    Confidential Information**

BrandVerity's terms of use and other contracts require it to give notice when a user's confidential data is sought by legal process.  Mr. Naffziger has already stated that there are 8,000+ users of BrandVerity's services to whom notice might be required.  It made little sense to give notice to 8,000+ users before the exact scope of the Subpoena was resolved.  As Mr. Naffziger explains in his supplemental declaration, four users who were specifically identified by TriMax have been contacted.  BrandVerity is not set up to handle mass notices of the sort that would be required if no limits are set on TriMax's Subpoena, particularly Requests Nos. 6-11.  If TriMax's requests are properly trimmed, the number of users whose data may be at issue would be substantially less.  It makes no sense to give notice before that happens.

### III.    CONCLUSION

For the foregoing reasons, the Court should enter an order quashing the Subpoena and allowing BrandVerity's costs and fees incurred.

DATED this 22nd day of May, 2015.

> Law Offices of Alan S. Middleton PLLC
> Attorneys for BrandVerity
>
> By: */s/ Alan S. Middleton*
>    Alan S. Middleton
> 18550 43rd Ave. NE
> Lake Forest Park, WA 98155

**REPLY MEMORANDUM IN SUPPORT OF MOTION TO QUASH — 6**

LAW OFFICES OF
ALAN S. MIDDLETON PLLC
18550 43rd Ave. NE
Lake Forest Park, Washington  98155
(206) 533-0490

## CERTIFICATE OF SERVICE

I, Alan S. Middleton, certify that on May 22, 2015, I caused a copy of the foregoing to be served upon the following by the means indicated.

| | |
|---|---|
| Peter S. Vogel<br>Gardere Wynne Sewell LLP<br>Counsel for TriMax<br>3000 Thanksgiving Tower<br>1601 Elm Street<br>Dallas, TX 75201-4761 | **By ECF** |
| John B. Crosetto<br>Garvey Schubert Barer<br>1191 Second Ave. Floor 18<br>Seattle, WA 98101-2996 | **BY ECF** |
| Katharine M. Atlas<br>Atlas Law PLLC<br>2625 Robinhood Street<br>Houston, TX 77005 | **BY EMAIL: katlas@atlastriallaw.com** |
| Bradley Coburn<br>Sherri A. Wilson<br>Denko Coburn Lauff LLP<br>3811 Bee Cave Road, Suite 204<br>Austin, TX 78746 | **BY EMAIL: coburn@dcllegal.com;<br>Wilson@dcllegal.com** |

DATED this 22nd day of May, 2015.

*/s/ Alan S. Middleton*
Alan S. Middleton

**REPLY MEMORANDUM IN SUPPORT OF MOTION TO QUASH — 7**

LAW OFFICES OF
ALAN S. MIDDLETON PLLC
18550 43rd Ave. NE
Lake Forest Park, Washington 98155
(206) 533-0490